UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS MORSE

Plaintiff,

v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,


Defendant.

_____

**DECISION
and
ORDER**

**17-CV-01178F**
(**consent**)

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
Attorneys for Plaintiff
JUSTIN JONES, of Counsel
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

JAMES P. KENNEDY, JR.
UNITED STATES ATTORNEY
BLAKELY J. PRYOR
Special Assistant United States Attorney
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
         and
DENNIS J. CANNING
United States Attorney, of Counsel
Office of General Counsel
Social Security Administration
601 E. 12th Street
Room 965
Kansas City, MO 64106

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on April 17, 2018, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

and
MARIA PIA FRAGASSI SANTANGELO
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278


## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C.

§ 636(c) and a Standing Order (Dkt. No. 8), to proceed before the undersigned.  (Dkt.

No. 8-1).  The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The

matter is presently before the court on motions for judgment on the pleadings filed by

Plaintiff on July 3, 2018 (Dkt. No. 10), and on August 31, 2018 by Defendant (Dkt.

No. 13).


## BACKGROUND

Plaintiff Douglas Morse ("Plaintiff"), brings this action under the Social Security

Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of

Social Security's final decision denying Plaintiff's application filed with the Social

Security Administration ("SSA"), on March 22, 2014, for Supplemental Security Income

under Title XVI of the Act ("SSI"), and Social Security Disability under Title II ("disability

benefits").  Plaintiff alleges he became disabled on October 1, 2008, as a result of

childhood depression, shoulder, back and ankle arthritis, pain, history of Hirschsprung's

disease, nausea and discomfort from hernia surgery. (R. 201).[2] Plaintiff's application

was denied on June 23, 2014 (R. 77), and upon Plaintiff's timely request, on August 11,

2016 a hearing was held in Buffalo, New York, before administrative law judge Roxanne

Fuller ("the ALJ"). (R.3-53). Appearing and testifying at the hearing were Plaintiff, with

legal counsel Michael Creech, Esq ("Creech"), and vocational expert James Radke ("the

VE").

On August 31, 2016, the ALJ issued a decision denying Plaintiff's claim (R. 20-

32) ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council, with Creech

appointed to represent Plaintiff on his administrative appeal. On September 27, 2017,

the Appeals Council issued a decision denying Plaintiff's request for review, rendering

the ALJ's decision the Commissioner's final decision. (R. 1-4). On November 17, 2017,

Plaintiff commenced the instant action seeking judicial review of the ALJ's decision. On

July 3, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. No. 10)

("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's

Motion for Judgment on the Pleadings (Dkt. No. 10-1) ("Plaintiff's Memorandum"). On

August 31, 2018, Defendant filed a motion for judgment on the pleadings and in

response to Plaintiff's brief (Dkt. No.13) ("Defendant's Motion"), attaching a

Memorandum in Support and in Response to Plaintiff's Brief (Dkt. No. 13-1)

("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on

September 20, 2018, Plaintiff's Response to the Defendant's Motion (Dkt. No. 14)

("Plaintiff's Reply"). Oral argument was deemed unnecessary.

---

[2] "R" references are to the page of the Administrative Record electronically filed on May 4, 2018 (Dkt. No. 7).

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED and matter is REMANDED for calculation of benefits. The Clerk of Court is directed to close the file.

## **FACTS**[3]

Plaintiff was born on August 23, 1970, completed four years of college, worked most recently as a respiratory therapist, and alleges that he became disabled on October 1, 2008, when he was no longer able to work as a result of his severe childhood depression, shoulder, back, ankle arthritis, limited range of motion, Hirschsprung's[4] disease, and nausea from hernia surgery. (R.201-02).

## **DISCUSSION**

### 1.	**Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g),

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

[4] Congenital condition in which some nerves in the large intestine are missing, creating gas, constipation, anemia, and sepsis. *See* https://mayoclinic.org/diseases-conditions.hirschsprungs-disease/symptoms-causes/syc-203515 (last visited May 13, 2018).

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

in substantial gainful activity during the period for which the benefits are claimed. 20

C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a

severe impairment which significantly limits the physical or mental ability to do basic

work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and

416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or

"the Listings"), and meets the duration requirement,[6] there is a presumption of inability

to perform substantial gainful activity, and the claimant is deemed disabled, regardless

of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A);

20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment

or its equivalent is not listed in Appendix 1, the Commissioner must then consider the

applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical

or mental work activities on a sustained basis, notwithstanding the limitations posed by

the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)(f),

and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and

416.920(e). If the applicant remains capable of performing PRW, disability benefits will

be denied, *id*., but if the applicant is unable to perform PRW relevant work, the

Commissioner, at the fifth step, must consider whether, given the applicant's age,

education, and past work experience, the applicant "retains a residual functional

capacity to perform alternative substantial gainful work which exists in the national

economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and

---

[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on

the applicant for the first four steps, with the Commissioner bearing the burden of proof

on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*,

537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ determined that Plaintiff did not engage in substantial

gainful activity since October 1, 2008, the alleged onset date of disability, and has the

severe impairments of irritable bowel syndrome, gastroesophageal reflux disorder,

anxiety and depression, that Plaintiff's impairments or combination of impairments do

not meet or medically equal the severity of any impairment in the Listings in Appendix 1,

that Plaintiff retained the residual functional capacity to perform light work with

limitations to the ability to perform simple, routine, repetitive tasks, with occasional

interaction with the public. (R. 22-25). The ALJ further concluded that Plaintiff is not

able to perform Plaintiff's past relevant work as a respiratory therapist, that the issue of

transferable job skills is not material to a determination of disability because, using the

Medical-Vocational Rules ('the Grids"), Plaintiff is capable of performing work existing in

significant numbers in the national economy including the jobs of mail clerk and hand

packer and, as such, is not disabled as defined under the Act. (R. 26)

Plaintiff does not contest the ALJ's findings with regard to the first, second, and

third steps of the five-step analysis, but argues that at step four, the ALJ violated the

treating physician rule by improperly evaluating the opinions of Plaintiff's treating

gastroenterologist Mohammed Fayyaz, M.D. ("Dr. Fayyaz"), and Nurse Practitioner Sara

Conboy ("N.P. Conboy"). Plaintiff's Memorandum at 17-27. Specifically, the ALJ

afforded little weight to Dr. Fayyaz's determination that Plaintiff's impairments would

cause Plaintiff to be off-task twenty percent of each workday and to miss at least three days of work per month because Plaintiff's physical examinations, medication management and laboratory test results did not support Dr. Fayyaz's finding.  (R. 29). The ALJ's determination is without support of substantial evidence in the record.

Plaintiff's medical history includes colostomy[7] surgery for Hirschsprung's disease when Plaintiff was two days old, reversal surgery at age two, a second colostomy surgery at age eight and reversal surgery at age 10.  (R. 459).  On April 2, 2014, Sahib Mehboob ("Dr. Mehboob"), a gastroenterologist with Gastroenterology Associates, noted Plaintiff's colostomies and reversals, that Plaintiff reported chronic inflammatory and crampy abdominal pain associated with constipation, diarrhea, and fecal incontinence with occasional nausea partially related to Plaintiff's chronic bowel disorder dating to Plaintiff's teenage years.  (R. 439).

On January 12, 2015, Plaintiff visited Dr. Fayyaz with reports of nausea and abdominal cramping, dry heaves lasting hours long somewhat improved by Zofran (nausea), with intermittent episodes of incontinence with green liquid stools.  (R. 459). Dr. Fayyaz noted that Plaintiff's medications include Miralax, sertraline (depression, panic attacks), Latuda (depression, bi-polar disorder), hydroxyzine (anxiety), ranitidine (gastroesophageal reflux disease) ("GERD"), trazodone (appetite), omeprazole (stomach acid), docusate (constipation), and Zofran, and ordered an upper

---

[7] Colostomy is a surgical procedure that brings one end of the large intestine through an opening in the individual's abdominal wall to a bag attached from outside the abdomen for draining stool.

gastrointestinal endoscopy[8] that Dr. Mehboob opined revealed reactive gastropathy (chemical injury to gastric mucosa of stomach). (R. 517).

On April 15, 2015, Marc Kryzstek, P.A. ("P.A. Krzystek"), a physician assistant in Dr. Fayyaz's office, completed a physical examination of Plaintiff and noted that Plaintiff reported daily morning nausea with dry heaves and sharp and crampy right-sided abdominal pain, erratic stools two-to-six times daily, diarrhea, and constipation. (R. 472-73).

On July 20, 2015, Laura Ann Pyzikiewicz, P.A. ("N.P. Pyzikiewicz"), a physician assistant in Dr. Fayyaz's office, completed a physical examination of Plaintiff and noted that Plaintiff reported chronic nausea, abdominal bloating, and twice-weekly vomiting, that Plaintiff's Bentyl medication taken every six hours was alleviating his abdominal cramping for only four hours and left Plaintiff with urgency and loose stools during the two hours between doses. (R. 476). P.A. Pyzikiewicz ordered a gastric emptying study and abdominal ultrasound and recommended that Plaintiff continue using Zofran for his nausea. *Id.* Plaintiff's gastric emptying study showed abnormal results with delayed stomach emptying at 76 minutes (normal emptying is one hour), with mild prominence of Plaintiff's spleen and a small contracted gallbladder reflected on Plaintiff's abdominal ultrasound. (R. 473-74). On October 19, 2015, P.A. Pyzikiewicz reviewed Plaintiff's test results and noted that Plaintiff reported chronic nausea. (R. 482).

On December 23, 2015, Dr. Fayyaz completed a physical examination on Plaintiff who reported daily intractable abdominal cramping and nausea occurring a few hours

---

[8] Endoscopy is a procedure that uses a flexible lighted tube to evaluate an individual's esophagus, stomach and colon.

each episode relieved with Zofran, and loose stools with three to four bowel movements each morning. Dr. Fayyaz prescribed Xifaxen (diarrhea, pain), daily probiotics, an anti-spasmodic, hyoscyamine (diarrhea), and counseled Plaintiff that his symptoms were chronic and that the treatment goal was symptomatic management. (R. 484).

On May 11, 2016, Plaintiff underwent upper and lower endoscopy procedures that revealed chronic gastritis, noninfective gastroenteritis and colitis. (R. 752).

On June 23, 2016, P.A. Krzystak completed an examination of Plaintiff who reported constipation for a few days followed by two days of diarrhea with two-to-six bowel movements daily. (R. 545).

On July 16, 2016, Dr. Fayyaz provided correspondence at the request of Plaintiff's counsel and noted that Plaintiff's various gastroenterological conditions and Hirschsprung's disease resulted in intense abdominal pain, cramping and loss of bowel control would likely keep Plaintiff off-task for more than twenty percent of each workday, cause Plaintiff to miss more than three days of work monthly, and rendered Plaintiff unemployable. (R. 755).

Plaintiff testified that he had to quit his job at Save-a-Lot grocery store because he had to use the bathroom two-to-three times during a four-hour workday (R. 43), is required to use the bathroom immediately after eating, and stays at home because of his depression, anxiety and fear of incontinence. (R. 44-45).

Dr. Fayyaz

Plaintiff contends that the ALJ violated the treating physician's rule by affording little weight to Dr. Fayyaz's opinion that Plaintiff would be off-task twenty percent of each workday, miss three days of work monthly, and that Plaintiff's impairment rendered

10

him unemployable.  Plaintiff's Memorandum at 20-25.  Plaintiff argues that the ALJ failed to properly weigh Dr. Fayyaz's opinion using required factors that include the frequency, length, nature and extent of treatment, supporting medical evidence, consistency and specialty of the treating physician.  Plaintiff's Memorandum at 18-24.  Defendant maintains that the ALJ properly afforded little weight to Dr. Fayyaz's findings as Plaintiff's gastroenterological impairment was conservatively treated, began when Plaintiff was a child yet Plaintiff graduated from high school and worked for more than 18 years, that Plaintiff reported normal bowel frequency prior to the date of Plaintiff's disability application, that Dr. Fayyaz's findings were inconsistent with P.A Pyzikiewicz's finding that Plaintiff's medication reduced his incontinence to four hours at a time, and that such finding was inconsistent with Plaintiff's normal laboratory test results.  Defendant's Memorandum at 27-29.  Defendant's argument is without merit.

The regulations define "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.  In this case, the ALJ concedes that Dr. Fayyaz, a gastroenterologist, is Plaintiff's treating physician.  (R. 29).

Treating physician opinions are not determinative and granted controlling weight only when not inconsistent with other controlling evidence, 20 C.F.R. § 404.1527(d); *Meyers v. Astrue,* 681 F.Supp. 2d 388, 405 (W.D.N.Y.) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)), and the treating physician rule requires the court consider four factors in determining whether an ALJ correctly refused to grant a treating physician's opinion controlling weight that include: "(i) the frequency of examination and

the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998). In this case, Dr. Fayyaz's opinion that Plaintiff would be off-task more than twenty percent of each workday is supported by substantial evidence in the record.

The ALJ supports his determination to afford little weight to Dr. Fayyaz's opinion that Plaintiff is unemployable because Plaintiff's physical examinations were unremarkable, Plaintiff's symptoms were treated with medication, and Plaintiff's lab tests and studies were normal. (R. 29-30). Plaintiff argues that evidence from Plaintiff's May 4, 2010, abdominal X-ray are "stale" and thus irrelevant to Dr. Fayyaz's finding on Plaintiff's ability to work, rendered July 6, 2016, that Plaintiff's condition became worse during the period between 2010 and 2016, that Plaintiff's gastric emptying study completed on August 22, 2015, was abnormal with delayed gastric emptying (R. 473-74), and that Plaintiff's abdominal ultrasound completed the same day was abnormal with a contracted bladder with wall thickening. (R. 475). Plaintiff's Memorandum at 22. The ALJ's finding that Plaintiff's test results were unremarkable is without support of substantial evidence. In particular, on July 8, 2010, Ajoy Roy, M.D. ("Dr. Roy"), noted that Plaintiff reported having to run to the bathroom immediately after eating, opined that Plaintiff may have irritable bowel disease ("IBS"), and recommended that Plaintiff receive treatment for his stress and anxiety. (R. 268). On July 10, 2010, Dr. Roy noted that Plaintiff reported severe epigastric pain and constipation worsened with physical activity, and irregular bowel movements. (R. 267). On July 14, 2014, Dr. Mehboob

opined that Plaintiff's endoscopy revealed gastritis, that Plaintiff's reports of intermittent nausea, diarrhea and constipation still exist, that Plaintiff's test results were inconclusive (neither normal or abnormal), and that Plaintiff most likely had IBS and functional bowel disorder.  (R. 495).  The ALJ's determination that Plaintiff's test results were normal is therefore without substantial evidence.

The ALJ's finding that Plaintiff's symptoms were successfully treated with medication is also without support of substantial evidence.  On September 6, 2014, Elizabeth Allen, N.P. ("N.P. Allen"), recommended that Plaintiff substitute Zantac for his Prilosec (gastritis), prescribed Miralax and Colace for breakthrough constipation, and added Ondansetron to Plaintiff's Zofran medication to treat Plaintiff's nausea.  (R. 522).  On April 2, 2014, Dr. Fayyaz noted that Plaintiff received no relief from his Omeprazole (R. 334), and that Plaintiff stopped taking Prilosec on September 6, 2014 (R. 522), prescribed Align and probiotics on January 12, 2015 (R. 460), and noted on January 13, 2015, that Plaintiff was prescribed Miralax, sertraline (depression, panic attacks), Latuda (depression, bi-polar disorder), hydroxyzine (anxiety), ranitidine (gastroesophageal reflux disease) ("GERD"), trazodone (appetite), omeprazole (stomach acid), docusate (constipation), and Zofran (R. 459), and did not take his Miralax on a regular basis because it caused diarrhea and incontinence.  On October 19, 2015, Dr. Fayyaz noted that Plaintiff reported his Levbid (for treatment of stomach and intestinal problems including cramps and irritable bowel syndrome medication) made his symptoms worse, and prescribed dicyclomine.  (R. 482).  Nothing on this record therefore supports the ALJ's decision to afford little weight to Dr. Fayyaz's opinion that Plaintiff would be off-

task twenty percent of each workday, would miss three days of work monthly, and was unemployable because Plaintiff's symptoms were successfully treated with medication.

Because the ALJ's consideration of Dr. Fayyaz's opinion was in violation of the treating physician's rule, the court adopts Dr. Fayyaz's opinion that Plaintiff would be off-task twenty percent of each workday, miss three days of work each month, and was unemployable. Plaintiff is thus disabled, and the court does not, therefore, include discussion of Plaintiff's remaining argument, Plaintiff's Memorandum at 24-26, that the ALJ erred in analyzing the opinion of N.P. Conboy.

**Suitable Alternative Employment in the National Economy**

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[9] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of

---

[9] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength...primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."

Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden

of proof concerning the availability of alternative employment and supersede the

requirement of VE testimony regarding specific jobs a claimant may be able to perform

in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Hypothetical questions posed to the VE based on a residual functional capacity

assessment supported by substantial evidence are also supported by substantial

evidence and without error. In this case, the ALJ's residual functional capacity finding

relied on the ALJ's affording little weight to Dr. Fayyaz's opinion that Plaintiff would be

off-task more than twenty percent of each workday, miss three days of work monthly,

and was unemployable which, as discussed, Discussion, *supra*, at 11-14, violates the

treating physician rule. The ALJ's hypothetical questions posed to the VE based on

such flawed residual functional capacity assessment is therefore also without

substantial evidence. *See Pursey v. Berryhill*, WL 2017 4985507, at *4 (W.D.N.Y. Nov.

2, 2017) (citing *Kennedy v. Astrue*, 343 Fed. Appx. 719, 722 (2d Cir. 2009) (no error

where hypothetical questions posed to the VE are based on residual functional capacity

assessment supported by substantial evidence)).

In particular, the ALJ posed a hypothetical question to the VE whether an

individual, who like Plaintiff, was capable of performing light work, with limitations to

performing simple, routine, repetitive work, with only occasional interaction with the

public, supervisors, and co-workers would be able to perform work in the regional or

national economies to which the VE stated that such individual would be able to perform

the jobs of mail clerk, a light, unskilled work, with 78,600 jobs available in the national

economy, cafeteria attendant, a light, unskilled work with 169,000 jobs available in the

national economy, and hand packer, light unskilled work with 26,400 jobs available in the national economy.  (R. 52).  The ALJ added a second hypothetical that included all of the limitations set forth in the ALJ's first hypothetical and the added limitation of being off-task twenty percent of each workday, which the VE opined would render the individual unable to perform the jobs of mail carrier, cafeteria attendant, and hand packer.  (R. 52).  Similarly, Plaintiff's counsel added an additional limitation that included an individual who would miss three days of work on a monthly basis, which the VE opined would render such an individual unable to sustain full-time employment.  (R. 53). Consistent with the court's finding that substantial evidence supports Dr. Fayyaz's finding that Plaintiff would be off-task twenty percent of each workday, would miss more than three days of work each month and was unemployable, and the VE's testimony that such limitations necessarily render an individual unable to maintain full-time employment, Plaintiff is unable to work and is thus disabled.  The matter is therefore REMANDED for calculation of benefits.

Mindful of the often painfully slow process by which disability determination are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and district courts may therefore "set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  In the instant case, Plaintiff filed his application for disability benefits on March 6, 2014, appeared and testified at an administrative hearing on August 11, 2016, following which the ALJ issued his decision denying Plaintiff's disability benefits application on August 31, 2016, which decision was affirmed by the Appeals Council on

September 27, 2017.  As it has been more than five years since Plaintiff first filed his disability benefits application, further delay for remand is a hardship Plaintiff should not bear.  Accordingly, upon remand, the Commissioner is required to complete the benefits calculation related to Plaintiff's claim within 120 days of the filing of this Decision and Order.  *See Dambrowski v. Astrue*, 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing 120-day time limit for subsequent proceedings where five years had elapsed since the plaintiff filed his application).


## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. No. 10) is GRANTED; Defendant's Motion (Dkt. No. 13) is DENIED.  The matter is REMANDED for calculation of benefits. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     June 12th, 2019
           Buffalo, New York